UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                          :

STEVENS & COMPANY LLC, d/b/a THE CHEF     :
AGENCY,
                                          :

                     Plaintiff,            :

                                            :

           -v-                              :

JASON ESPAT,                              :

                                            :

                    Defendant.         :

------------------------------------------------------------------X
                                          :

JASON ESPAT,                              :

                   Third-Party Plaintiff/Counterclaimant,   :

                                          :

           -v-                              :

STEVEN KAMALI,                          :

                   Third-Party Defendant,     :

           and                             :

STEVENS & COMPANY LLC, d/b/a THE CHEF     :
AGENCY,
                                          :

                   Counterclaim Defendant.   :

                                          :

------------------------------------------------------------------X

                 USDC SDNY
                 DOCUMENT
                 ELECTRONICALLY FILED
                 DOC #:_____
                 DATE FILED: _03/28/2025__

24-cv-5223

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Counterclaim Defendant Stevens & Company LLC d/b/a The Chef Agency ("TCA") and

Third-Party Defendant Steven Kamali ("Kamali" and with TCA, the "Moving Parties") move,

pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Third, Sixth, Seventh, Ninth,

Tenth, Fifteenth, and Sixteenth causes of action of the amended counterclaims and third-party complaint of Counterclaimant/Third-Party Plaintiff Jason Espat ("Espat"). Dkt. No. 43.[1]

For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court assumes the truth of the well-pleaded allegations of the amended counterclaims and third-party complaint.

Espat is a natural person who is a resident of California. Dkt. No. 42 ¶ 11.[2] He has worked in the recruiting and placement industry, focused on the hospitality space, for approximately sixteen years. *Id.* ¶ 20. TCA is a domestic limited liability company organized under the laws of New York. *Id.* ¶ 12. Kamali is a natural person residing in New York who is the sole member of TCA. *Id.* ¶ 13.

TCA employed Espat from on or about September 21, 2022, through December 21, 2022. *Id.* ¶ 19.[3] His employment was governed by a Regional Partnership Agreement drafted by TCA and Kamali. *Id.* The Regional Partnership Agreement classified Espat as a "partner" and thus an independent contractor, not an employee. *Id.* ¶ 25. Espat alleges that he was misclassified. *Id.* Upon commencing work with TCA, he received a company email address and log-in credentials to authenticate into the company's computer systems. *Id.* ¶ 30. He and his colleagues were also expected to (and did) link all of their social media accounts with the company's systems. *Id.* ¶ 31.

---

[1] The notice of motion fails to reference the rule pursuant to which TCA and Kamali seek dismissal of the counterclaims and third-party claims, in violation of Local Rule 7.1(a). Dkt No. 43. However, the Moving Parties' memorandum of law invokes Rule 12(b)(6). Dkt. No. 45 at 3.

[2] All citations to Dkt. No. 22 refer to the numbered paragraphs within the "Counterclaims and Third-Party Complaint" section of the document.

[3] Espat also alleges that he began working for Moving Parties on or about October 19, 2022. *Id.* ¶ 26. The difference is immaterial to this motion.

During Espat's first three weeks of employment, he participated remotely from California in an intense unpaid training period with TCA's systems and operations. *Id.* ¶¶ 27–28. During this training period, he and similarly-situated colleagues were expected to conduct fifteen to twenty phone interviews daily with prospective candidates for potential placement with TCA's hospitality clients, populate the company database with information required by the company, and summarize their calls and submit those reports into the company's database. *Id.* ¶ 29. Following the initial three weeks of training, Espat regularly worked 50-hour work weeks and was expected to both work on Pacific Standard Time and be available on Eastern Standard Time. *Id.* ¶ 32.

During November and December 2022, Espat secured two placements for the company's clients. *Id.* ¶ 34. Commissions for those placements still remain unpaid to him. *Id.*

In or about late November 2022, Espat and his colleagues went to New York for an in-person company retreat and another round of days-long classroom-style training sessions. *Id.* ¶ 35. During the company retreat, Espat had a number of in-person meetings with Kamali. *Id.* ¶ 38. He brought his concerns regarding unpaid training sessions to Kamali's attention, but those concerns were not addressed. *Id.* ¶ 40. He also inquired about the possibility of getting his commissions paid, but Kamali and John Rothstein, TCA's Chief Operating Officer, voiced their displeasure about Espat's concerns. *Id.* ¶ 41.

On or about December 21, 2022, Espat received a call from Rothstein, who informed him that Kamali should not be bothered with Espat's concerns about compensation. *Id.* ¶ 42. A very short time thereafter, Espat received a termination notice which falsely alleged that he had violated the non-competition provisions of the Regional Partnership Agreement and was being terminated as a result. *Id.* ¶ 43.

In January 2023, Espat initiated administrative proceedings before the California Division of Labor Standards Enforcement ("DLSE") concerning his claim that he was subjected to minimum wage and overtime violations. *Id.* ¶ 44. On or about February 22, 2023, counsel for the Moving Parties reached out to Espat to inquire whether the matter could be resolved amicably, to which Espat said it could not be. *Id.* ¶ 45.

In April 2024, the DLSE sent notice to Espat and, upon information and belief, TCA and Kamali, that a conference was being scheduled on Espat's administrative claim for mid-May 2024. *Id.* ¶ 46. On or about May 21, 2024, the conference date was rescheduled to June 11, 2024. *Id.* ¶ 47. On or about May 29, 2024, before the scheduled hearing, TCA filed its summons with notice in New York State Supreme Court, New York County. *Id.* ¶ 48.

## PROCEDURAL HISTORY

TCA commenced this action by summons with notice filed in New York State Supreme Court, New York County, on or about May 29, 2024. Dkt. No. 1 ¶ 1. TCA filed its complaint on September 10, 2024. Dkt. No. 20. In its complaint, TCA alleges that it organizes itself by recruiting talented individuals to act as regional partners to assist in identifying and placing top talent. *Id.* ¶¶ 14–15. It claims that Espat misrepresented his experience in high-end recruitment and was terminated after he failed to perform his job as required by the Regional Partnership Agreement. *Id.* ¶¶ 4–5. TCA further claimed that after Defendant was terminated, he misused confidential and proprietary information obtained from TCA to establish a competing business, in direct breach of the Regional Partnership Agreement. *Id.* ¶¶ 5, 28–31. The complaint asserts claims against Espat for breach of contract and breach of fiduciary duty. *Id.* ¶ 1.

On September 30, 2024, Espat filed his answer to the complaint, along with counterclaims against TCA and a third-party complaint against Kamali. Dkt. No. 22. Espat asserted fourteen causes of action against TCA and Kamali, many of which are predicated on the

notion that he was an employee and not an independent contractor: (1) failure to pay minimum wage in violation of the Fair Labor Standards Act of 1938 ("FLSA"), *id.* ¶¶ 51–55; (2) failure to pay overtime wages in violation of FLSA, *id.* ¶¶ 56–61; (3) failure to pay minimum wage in violation of California law, *id.* ¶¶ 62–67; (4) failure to pay overtime wages in violation of California law, *id.* ¶¶ 68–71; (5) violation of California Labor Code Section 925, *id.* ¶¶ 72–78; (6) "unlawful non-compete restrictions," *id.* ¶¶ 79–85; (7) breach of contract or unjust enrichment, *id.* ¶¶ 86–92; (8) retaliation in violation of FLSA, *id.* ¶¶ 93–103; (9) retaliation in violation of California law, *id.* ¶¶ 104–114; (10) failure to provide accurate wage statements in violation of the California labor code, *id.* ¶¶ 115–117; (11) a claim for a declaratory judgment that TCA and Kamali are employers, Espat is an employee, and the Regional Partnership Agreement contains clauses prohibited by California law, *id.* ¶¶ 118–123; (12) misclassification, minimum wage, and overtime violations and retaliation in violation of the New York Labor Law, *id.* ¶¶ 124–129; (13) failure to provide accurate wage statements in violation of the New York Labor Law, *id.* ¶¶ 130–132; and (14) violation of New York City's Freelance Isn't Free Act, *id.* ¶¶ 133–143.

TCA replied to the counterclaims on October 14, 2024.  Dkt. No. 29.

On December 17, 2024, Espat filed an amended counterclaims and third-party complaint. Dkt. No. 42.  Espat added two new claims: abuse of process, *id.* ¶¶ 147–154, and malicious prosecution, *id.* ¶¶ 155–162.

On January 6, 2025, the Moving Parties filed this motion to dismiss along with a declaration of counsel and a memorandum of law in support.  Dkt. Nos. 43–45.  Espat filed a memorandum of law in opposition to the motion on January 14, 2025.  Dkt. No. 46.  On January 21, 2025, the Moving Parties filed a reply memorandum of law in further support of the motion

to dismiss and a declaration of counsel.  Dkt. No. 47–48.  Espat then filed a sur-reply on January

27, 2025, along with a declaration with one exhibit.  Dkt. No. 49.[4]

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual

allegations in the complaint and draw all possible inferences from those allegations in favor of

the plaintiff.  *See York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002),

*cert. denied*, 537 U.S. 1089 (2002).  This requirement "is inapplicable to legal conclusions."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Thus, "[t]hreadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  A complaint must

offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of

action" or "naked assertion[s]" devoid of "further factual enhancement" in order to survive

dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  The ultimate question is

whether "[a] claim has facial plausibility, [i.e.] the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  *Id*. at 679.  Put another way, the plausibility requirement "calls

for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting

---

[4] Espat "neither sought nor received permission from the court to file a surreply," and the sur-
reply will not be considered.  *Endo Pharms. Inc. v. Amneal Pharms., LLC*, 2016 WL 1732751, at
\*9 (S.D.N.Y. Apr. 29, 2016).  "[N]either the Federal Rules of Civil Procedure nor the Local
Civil Rules of this court authorize litigants to file surreplies," which can place courts "in the
position of refereeing an endless volley of briefs."  *Kapiti v. Kelly*, 2008 WL 754686, at \*1 n.1
(S.D.N.Y. Mar. 12, 2008) (citation omitted), *aff'd*, 2008 WL 1882652 (S.D.N.Y. Apr. 28, 2008).
In any event, the contents of the sur-reply "would not change the result in this case."  *Convergen
Energy LLC v. Brooks*, 2020 WL 4500184, at \*3 n.2 (S.D.N.Y. Aug. 5, 2020).

the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives v. Siracusano*, 563 U.S. 27,

46 (2011).

## DISCUSSION

Moving Parties argue that the third, sixth, ninth, and tenth causes of action, which seek

relief under California law, must be dismissed because the Regional Partnership Agreement

provides that: "This Agreement shall be governed by the laws of the State of New York without

regard to conflict of law principles."  Dkt. No. 45 at 3–4.  They argue that the seventh cause of

action for unjust enrichment should be dismissed because Espat concedes the existence of a valid

and enforceable agreement.  *Id.* at 4–5.  Finally, Moving Parties argue that Espat has not alleged

facts necessary to support his fifteenth cause of action for abuse of process and that his sixteenth

cause of action for malicious prosecution is premature.  *Id.* at 5–6.[5]

## I.    The Third, Sixth, Seventh, Ninth, Tenth Causes of Action

Espat argues that his claims under California law are properly pled, and moreover that the

motion to dismiss such claims is untimely.  Dkt. No. 46.

### A.    Timeliness

The third, sixth, seventh, ninth and tenth causes of action in Espat's amended

counterclaims and third-party complaint were also alleged *in haec verba* in Espat's initial

counterclaims and third-party complaint.  *Compare* Dkt. No. 42 *with* Dkt. No. 22.  The Moving

Parties chose to answer the initial counterclaims and third-party complaint rather than to move

---

[5] The Moving Parties additionally state in their reply brief that they "inadvertently omitted" the fifth cause of action, and request that the Court, "in the interest of judicial economy," "sua sponte dismiss the fifth cause of action if it grants dismissal of the California law-based claims." Dkt. No. 47 at 4 n.1.  Because this argument was raised for the first time in reply, the Court will not address it here.  *See Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 305 n.2 (2d Cir. 2020).

against the claims. Espat therefore argues that the Moving Parties' 12(b)(6) motion challenging those claims is untimely. Dkt. No. 46 at 5.

Federal Rule of Civil Procedure 12(b) specifies that a motion made to assert the defense that the pleading fails to state a claim upon which relief can be granted "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). The failure to make a motion to dismiss based upon the failure to state a claim for relief before filing a responsive pleading does not waive the defense but instead requires that such a defense be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2).

Courts have consistently held that a party may not move to dismiss an amended complaint on the basis of defenses it could have raised, but did not, when moving to dismiss an initial complaint. *See Falcon v. City Univ. of N.Y.*, 2016 WL 3920223, at *13 (E.D.N.Y. July 15, 2016); *Naples v. Stefanelli*, 2015 WL 541489, at *5 (E.D.N.Y. Feb. 7, 2015); *G.L.M. Sec. & Sound, Inc. v. LoJack Corp.*, 2012 WL 4512499, at *9 (E.D.N.Y. Sept. 28, 2012); *Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.*, 217 F.R.D. 305, 307 (N.D.N.Y. 2003); *Jones v. U.S. Bank Nat. Ass'n*, 2012 WL 899247, at *8 (N.D. Ill. Mar. 15, 2012). Although "it is true that an amended complaint ordinarily supersedes a prior complaint, and renders it of no legal effect, . . . the amended complaint does not automatically revive all the defenses and objections the defendant may have waived in a first motion to dismiss." *Sears Petroleum*, 217 F.R.D. at 307. If and to the extent that "the amended complaint also contains new matter, the defendant may bring a second motion under Rule 12 to object to the new allegations only." *Id*. Here, the Moving Parties seek to make a 12(b)(6) objection to the third, sixth, seventh, ninth, and tenth

causes of action that is unrelated to any new allegations and could have been made in response to the original counterclaims and third-party complaint. Therefore, the motion is untimely.

However, the Second Circuit has held that "a motion to dismiss for failure to state a claim . . . that is styled as arising under Rule 12(b) but is filed after the close of pleadings[] should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001); *see Abbas v. Tate*, 2022 WL 355401, at *2 (S.D.N.Y. Feb. 4, 2022). Unlike other defenses under Rule 12(b), "the defense of failure to state a claim is not waivable." *Patel*, 259 F.3d at 126; *see* Fed. R. Civ. P. 12(h). Even if the defense is not timely raised by a motion under Rule 12(b)(6), it is revivable at any time up until trial. *See Perez Perez v. Escobar Constr.*, 2024 WL 3594325, at *1 n.1 (2d Cir. July 31, 2024). Moreover, "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel*, 259 F.3d at 126. There is therefore "no point" in denying a Rule 12(b)(6) motion as untimely, as the movant "would be free to make an essentially identical motion pursuant to Rule 12(c)." *Leighton v. Poltorak*, 2018 WL 2338789, at *1 (S.D.N.Y. May 23, 2018). In keeping with this principle, the Court considers the Moving Parties' motion on its merits.

### B.    Merits

Espat's third, sixth, seventh, ninth, and tenth causes of action are respectively for (3) failure to pay minimum wage in violation of California law, *id.* ¶¶ 63–68; (6) "unlawful non-compete restrictions," *id.* ¶¶ 80–86; (7) breach of contract or unjust enrichment, *id.* ¶¶ 87–93; (9) retaliation in violation of California law, *id.* ¶¶ 106–117; and (10) failure to provide accurate wage statements in violation of the California labor code, *id.* ¶¶ 118–120. The Moving Parties argue that the third, sixth, ninth, and tenth causes of action must be dismissed because the Regional Partnership Agreement is governed by New York law, not California Law. Dkt. No. 45

at 4.  They additionally argue that the seventh cause of action for unjust enrichment must be

dismissed because Espat concedes the existence of an enforceable agreement.  *Id.* at 4–5.  Espat

argues that he may bring claims under California Law due to California Labor Law Section 925,

which renders certain contractual provisions voidable to the extent that they deprive an employee

of the protections of California Law.  Dkt. No. 46 at 4.

### 1.    Choice of Law

The Regional Partnership Agreement states:

> This Agreement shall be governed by the laws of the State of New York without
> regard to conflict of law principles.  The parties hereto hereby consent to the
> exclusive jurisdiction of the Supreme Court of the State of New York, County of
> New York, and the United States District Court for the Southern District of New
> York for all purposes in connection with any legal proceeding between them
> relating to or arising out of this Agreement.

Dkt. No. 42 ¶ 76.

"[O]nce a court finds that a contractual choice-of-law clause is valid, the law selected in

the clause dictates how the contract's provisions should be interpreted."  *Fin. One Pub. Co. v.*

*Lehman Bros. Special Fin*., 414 F.3d 325, 332 (2d Cir. 2005).  However, "[t]he validity of a

contractual choice-of-law clause is a threshold question that must be decided not under the law

specified in the clause, but under the relevant forum's choice-of-law rules governing the

effectiveness of such clauses."  *Id.*  Because "courts consider the scope of a contractual choice-

of-law clause to be a threshold question like the clause's validity," the scope of a choice-of-law

clause is also determined by the law of the forum.  *Id.* at 333.  Therefore, the Court applies New

York law to determine the validity and scope of the choice-of-law clause in the Regional

Partnership Agreement.

The Second Circuit has stated that under New York law, a choice-of-law provision will

be enforced if the chosen law "has sufficient contacts with the transaction" and there is no "fraud

or violation of public policy." *United States v. Moseley*, 980 F.3d 9, 20 (2d Cir. 2020). Courts in this District have disputed whether this test properly incorporates recent New York jurisprudence, specifically the New York Court of Appeals decision in *Ministers & Missionaries Benefit Board v. Snow*, 45 N.E.3d 917, 922 (N.Y. 2015). *Compare Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 91–96 (S.D.N.Y. 2021) ("[I]t is hard to avoid the conclusion that the *Moseley* Court simply overlooked *Ministers & Missionaries*.") *with Medtronic, Inc. v. Walland*, 2021 WL 4131657, at *4–8 (S.D.N.Y. Sept. 10, 2021). The Court is, of course, "bound to follow the Second Circuit's interpretation of New York law" until such time as it is clarified or overruled. *Willis Re*, 550 F. Supp. 3d at 94. Moreover, there is reason to believe that the analysis in *Moseley* is reconcilable with *Ministers & Missionaries* and related New York cases.

Uncertainty in this area of law stems at least in part from a perceived shift in New York jurisprudence on the enforcement of contractual choice-of-law clauses over the past fifteen years. Historically, New York courts faced with a choice-of-law provision would nevertheless "conduct a conflicts analysis and apply the law of the jurisdiction with 'the most significant relationship to the transaction and the parties.'" *IRB-Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 982 N.E.2d 609, 611 (N.Y. 2012) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 642 N.E.2d 1065, 1068 (N.Y. 1994)). This analysis often had the effect of overriding the parties' preferred choice of New York law. *Id.* In order to eliminate uncertainty and protect New York's status as a commercial center, the state legislature passed a statute, General Obligations Law § 5-1401, stating that parties to transactions covering $250,000 or more "may agree that the law of this state shall govern their rights and duties in whole or in part, whether or not such contract, agreement or undertaking bears a reasonable relation to this state." *Id.* (quoting N.Y. General Obligations Law § 5–1401(1)). In *IRB-Brasil*, the New York Court of Appeals held that this

statute required that a court faced with such a contract simply apply New York's substantive law, without applying any New York conflict-of-laws rules that might result in application of the substantive law of another jurisdiction.  *Id.* at 612.

Subsequently, in *Ministers & Missionaries Benefit Board v. Snow*, the Court of Appeals extended this holding to contracts that do not fall within General Obligations Law § 5-1401, stating broadly that "courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract."  45 N.E.3d 917, 922 (N.Y. 2015).  That holding was rooted in the principle that "contracts should be interpreted so as to effectuate the parties' intent," and "by including a choice-of-law provision in their contracts, the parties intended for only New York substantive law to apply," not New York conflicts principles.  *Id.* at 919, 923; *see Petróleos de Venezuela S.A. v. MUFG Union Bank, N.A.*, 235 N.E.3d 949, 955 (N.Y. 2024) ("The inclusion of a New York choice-of-law clause in a contract demonstrates the parties' intent that courts not conduct a conflict-of-laws analysis." (citation and quotation marks omitted)).  These cases appear to, at minimum, discourage courts from contravening the choice of the parties via the type of broad, common-law conflicts analysis they had historically undertaken.  *Id.* at 957.

The sweeping language of *Ministers & Missionaries* has also been read by some courts to go further, eliminating all previously-existing principles of New York law governing the validity or enforceability of a choice-of-law provision.  On this reading, the court "should not engage in any conflicts analysis" and must simply apply the chosen law.  *See Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583 (S.D.N.Y. 2018) ("The language of *Ministers* is unequivocal and brooks no exceptions."); *Willis Re*, 550 F. Supp. 3d at  93–94; *BDO USA, P.C. v. Rojas*, 2024 WL 3236822, at *7 (S.D.N.Y. June 27, 2024), *reconsideration denied*, 2024 WL 3729581 (S.D.N.Y. Aug. 8, 2024).  As applied here, the Court would not examine whether the

choice-of-law provision in the Regional Partnership Agreement is void or voidable, as Espat

claims, but would simply enforce it because it was chosen.  *See Willis Re*, 550 F. Supp. 3d at 93.

However, the Second Circuit has not followed this view.  In *Moseley*, which postdated

*Ministers & Missionaries*, the Circuit made clear that though the choice of the parties should

generally be respected under New York law, enforcement of a choice-of-law provision is not

automatic.  *See* 980 F.3d at 20.  Drawing on case law predating *Ministers & Missionaries*, it

stated that a choice-of-law provision will be enforced if the chosen law "has sufficient contacts

with the transaction" and there is no "fraud or violation of public policy."  *Id.* (quoting *Int'l*

*Minerals & Res., S.A.* v. *Pappas*, 96 F.3d 586, 592 (2d Cir. 1996)); *see DarkPulse, Inc. v. Crown*

*Bridge Partners LLC*, 2024 WL 3872725, at *2 (2d Cir. Aug. 19, 2024) (requiring a "reasonable

relationship to the parties or the transaction" (citation omitted)); *see also Askari v. McDermott,*

*Will & Emery, LLP*, 114 N.Y.S.3d 412, 428 (2d Dep't 2019) (applying public policy exception

after *Ministers & Missionaries*).  The Circuit therefore refused to enforce choice-of-law

provisions specifying the laws of jurisdictions with no usury restrictions to govern contracts

which were otherwise usurious under New York law, stating that such provisions were

"unenforceable in New York as against its public policy."  *Moseley*, 980 F.3d at 22.

The Court is not convinced that the New York Court of Appeals' decision in *Ministers &*

*Missionaries* is inconsistent with the Second Circuit's analysis in *Moseley*.  The cases address

different issues.  *Ministers & Missionaries* addresses the proper interpretation of a choice-of-law

clause, while *Moseley* addresses the threshold issue of whether the choice-of-law clause is valid

and enforceable.

The parties in *Ministers & Missionaries* did not contest that their contract contained a

valid choice-of-law provision selecting New York law.  *See* 45 N.E.3d at 919.  The question

presented was "how to interpret the phrase 'laws of . . . New York'" in that provision.  *Id.*; *see Medtronic, Inc.*, 2021 WL 4131657, at *5.  The Court of Appeals held that as a matter of "the most reasonable interpretation of the contract language," "laws . . . of New York" means only New York substantive law, not New York conflicts principles that could result in the choice of another states law.  *Id.* at 922–23.  The Court of Appeals framed its decision of that issue as consistent with the Restatement (Second) of Conflict of Laws § 187(3), which states that "references to the law of a state chosen by the parties means the 'local law' of that state," not its conflict of laws rules.  *Id.* at 921, 923.  The holding of *Ministers & Missionaries* therefore directly addressed only the proper interpretation of "New York law" within a choice-of-law clause.  It did not discuss prior case law, including some from the very same year, suggesting that New York will sometimes hold choice-of-law provisions unenforceable on public policy grounds.  *See Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 368–69 (N.Y. 2015).

By contrast, *Moseley* addresses the threshold issue whether a choice-of-law provision is valid and enforceable.  It suggests that New York courts will only enforce a choice-of-law clause in the first instance if the chosen jurisdiction has "sufficient contacts with the transaction" and there is no "fraud or violation of public policy."  980 F.3d at 20.  This is consistent with the principle that if the provision is enforced, the court should apply New York substantive law without regard to New York conflicts principles.  Limiting the holding of *Ministers & Missionaries* to the content or scope of the choice-of-law provision, rather than its validity and enforceability, also coheres with the Court of Appeals' framing of *Ministers & Missionaries* as following the Restatement (Second) of Conflict of Laws § 187(3).  The statement in Section 187(3) of the Restatement that "references to the law of a state chosen by the parties means the 'local law' of that state," leaves entirely unaffected the rule of Section 187(2) that the

law chosen by the parties will govern issues such as capacity, formalities, and illegality only if

certain conditions are met.  *See* Restatement (Second) of Conflict of Laws § 187 & cmt. d, h.

Notably, these conditions are highly similar to the preconditions for enforcement suggested by

*Moseley*.  *See id.  Ministers & Missionaries* rested on respect for the agreement of the parties, but

issues such as validity and enforceability generally are not determined by agreement of the

parties.  *See, e.g.*, Restatement (Second) of Contracts § 187, cmt. d ("A person cannot vest

himself with contractual capacity by stating in the contract that he has such capacity.");

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2022 WL 1997207, at *20 (S.D.N.Y. June 6,

2022) (noting that "a usurious loan is void and unenforceable" regardless of the parties'

intentions).  *Ministers & Missionaries* clearly held that when the parties agree on the law of a

certain jurisdiction, they have agreed upon that jurisdiction's substantive law.  It is less clear that

it abrogated existing New York law regarding when the parties are permitted to choose the law

of a certain jurisdiction at all.

Thus, even after *Ministers & Missionaries*, whether New York law requires courts to

enforce choice-of-law clauses that lack any relationship to the transaction[6] or are contrary to

New York policy is an open question.  *See Petroleos de Venezuela S.A. v. MUFG Union Bank,

N.A.*, 51 F.4th 456, 472 (2d Cir. 2022) ("The Court of Appeals of New York has not decided

whether, in light of Ministers and IRB-Brasil, New York recognizes this [public policy]

exception to the principle that choice-of-law clauses are enforceable and require application only

of the "substantive law" of the chosen jurisdiction."); *Capstone Logistics Holdings, Inc. v.*

---

[6] As to transactions covering $250,000 or more, enforcement of a New York choice-of-law
clause which lacks any relationship to the transaction is required by statute.  *See IRB-Brasil*, 982
N.E.2d at 611.  However, it is not clear whether *Ministers & Missionaries* intended to apply the
same principle to other transactions as a matter of New York law.

*Navarrete*, 736 F. App'x 25, 26 (2d Cir. 2018) (summary order).  Although it is possible that the

New York Court of Appeals would read *Ministers & Missionaries* to require this result, it is

quite possible that the Court of Appeals would balk at enforcing choice-of-law clauses that

merely attempt to evade otherwise governing law or fundamental state policy, at least in

contracts not falling within General Obligations Law § 5-1401.[7]  *See Moseley*, 980 F.3d at 22.

At this time, the Second Circuit has held that the latter position better reflects New York law.

*See id.*

Therefore, the Court will determine the enforceability of the choice-of-law provision in

the Regional Partnership Agreement under the standard set out in *Moseley*: the choice of the

parties will be respected so long as "the [s]tate selected has sufficient contacts with the

transaction" and there is no "fraud or violation of public policy."  *Id.* at 20 (quoting *Pappas*, 96

F.3d at 592).  Notably, this standard does not contemplate a wide-ranging conflicts analysis to

determine the state that is most interested in the transaction, but rather a limited inquiry aimed

largely at protecting the interests of New York and its courts, which is consistent with the

emphasis in New York decisions on "stability, certainty, predictability and convenience."

*Ministers & Missionaries*, 45 N.E.3d at 923; *see Willis Re*, 550 F.Supp.3d at 95–96 (noting that

the broad analysis contemplated by the Restatement has been rejected by New York courts).

Under the *Moseley* standard, the choice of New York law in the Regional Partnership

Agreement is enforceable.[8]  The contract has a reasonable relationship to New York, because

---

[7] Indeed, that statute's statement that the relationship of the chosen law to the transaction should
not be considered in transactions covering $250,000 or more and choosing New York law
arguably implies that this relationship normally would be properly considered in other contexts.
[8] Of course, under the broader reading of *Ministers & Missionaries* advanced by some courts, it
is even more clear that the choice-of-law provision is enforceable.  On that reading, the Court
would not consider whether the chosen law had a connection to the transaction or was consistent

TCA is based in New York and Espat did at least some portion of his work for the company in New York.  Dkt. No. 45 ¶¶ 12, 35.  Espat resided in California and seemingly worked primarily from California, but this does not mean that New York was unrelated to the transaction.  In a transaction between parties in two jurisdictions in which both jurisdictions have an interest, New York law suggests that the parties should be free to choose the law of either jurisdiction.  *See Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 859 N.E.2d 498, 500 (2006); *Willis Re*, 550 F. Supp. 3d at 95 (holding that reasonable relationship test was satisfied when employee was based in California and worked for a company in New York); *Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 172 (S.D.N.Y. 2006) (similar, and noting in the context of a restrictive covenant that "New York [has] a strong interest in protecting companies doing business here"); *see also IRB-Brasil Resseguros*, 982 N.E.2d at 611 (rejecting "most significant relationship" test).  When multiple laws could potentially apply, freedom to choose the governing law protects "the interest of parties in knowing *ex ante* 'the extent of their rights and duties under the contract.'" *Cambridge Cap. LLC v. Ruby Has LLC*, 675 F. Supp. 3d 363, 423 (S.D.N.Y. 2023) (quoting Restatement (Second) of Conflict of Laws § 187, cmt. f).[9]

Moreover, enforcing the contract does not violate the public policy of the state of New York.  A litigant "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy."  *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 583–84 (S.D.N.Y. 2018).  As discussed below, California has a policy interest in

---

with public policy but would simply apply the choice-of-law clause.  *See Willis Re*, 550 F.Supp.3d at 92–93.

[9] This case does not involve a situation where the relationship of the chosen law to the transaction is "wholly fortuitous" or in which the parties are attempting to "foist on the court a law that might be convenient to it (or to them) but otherwise alien to the transaction."  *Id.* at 422–423; *see* Restatement (Second) of Conflict of Laws § 187, cmt. f.

applying its own law to this transaction.  However, California policy does not provide grounds for a New York court to hold a contract unenforceable.  *See Willis Re*, 550 F. Supp. 3d at 96. New York Courts have consistently framed the public policy exception as concerning whether "application of [the chosen] law would be offensive to a fundamental public policy of *this State*." *Brown & Brown*, 34 N.E.3d at 369 (emphasis added) (quoting *Welsbach*, 859 N.E.2d at 503); *see Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 284–85 (N.Y. 1993) ("[T]he public policy exception should be considered only after the court has first determined, under choice of law principles, that the applicable substantive law is not the forum's law."); *Moseley*, 980 F.3d at 20 (framing the issue as whether there is "a fundamental New York public policy as might overcome the parties' stated choice of law").  Under New York law, which the Court is bound to apply here, the public policy exemption simply does not concern the general interests of other states in the subject-matter of the contract.[10]

The Regional Partnership Agreement involves a New York employer, and the choice of New York law to govern the agreement does not offend New York public policy.  Therefore, under New York law, the parties' choice of law is enforceable.  Pursuant to *Ministers & Missionaries*, the Court will apply New York law to the Agreement without regard to further conflicts rules.

---

[10] By contrast, the Second Restatement of Conflict of Laws states that a choice-of-law provision should not be enforced when its application would be contrary to "a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue."  Restatement (Second) of Conflict of Laws § 187(b).  This framing has the benefit that "[t]he result would be based on the parties' ties to the state whose law they chose, not the forum in which the case was brought."  *TGG Ultimate Holdings, Inc. v. Hollett*, 2017 WL 1019506, at *4 (S.D.N.Y. Feb. 24, 2017).  However, apart from one Appellate Division case, *see Marine Midland Bank, N.A. v. United Missouri Bank, N.A.*, 643 N.Y.S.2d 528, 531 (1st Dep't 1996), this provision of the Restatement does not appear to be followed in New York.  Rather, the public policy exception concerns "foreign laws that are truly obnoxious" and therefore unenforceable in New York courts.  *Moseley*, 980 F.3d at 20 (quoting *Brown & Brown*, 34 N.E.3d at 368).

This conclusion is not altered by the fact that the choice-of-law provision is likely voidable under California law.  Section 925 of the California Labor Code states that:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.
>
> (b) Any provision of a contract that violates subdivision (a) is voidable by the employee, and if a provision is rendered void at the request of the employee, the matter shall be adjudicated in California and California law shall govern the dispute.

Cal. Lab. Code § 925.

If California law applied to the Regional Partnership Agreement, this statute would arguably[11] make the choice-of-law and choice-of-venue provisions voidable, because they require Espat to adjudicate his claims outside of California and deprive Espat of the protections of California law regarding, for example, non-compete agreements.  *See Willis Re*, 550 F. Supp. 3d at 92 ("[W]hile New York law is generally friendly to non-compete provisions, California law is quite the opposite." (citing Cal. Bus. & Prof. Code § 16600)).  However, the argument that the choice-of-law provision is prohibited under Section 925 "merely begs the question of whether California law, and thus Section 925, applies."  *Id.* at 91.  The Court is sitting in diversity and is required to determine the validity of the provision under the law of New York, the forum state.  *See AEI Life LLC v. Lincoln Ben. Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018); *Forest Park*

---

[11] Moving Parties contend that even under California law, Section 925 would not apply because Espat is an independent contractor rather than an employee and because Espat has not properly voided relevant provisions.  Dkt. No. 47 at 4.  Because the Court finds that New York law applies, it need not address these arguments.

*Pictures v. Universal Television Network, Inc*., 683 F.3d 424, 433 (2d Cir. 2012). New York law does not provide for consideration of the interests of other states when an agreement is governed by a clause selecting New York law. *See Willis Re*, 550 F. Supp. 3d at 96; *Brown & Brown*, 34 N.E.3d at 369; *Cooney*, 612 N.E.2d at 284–85. There is therefore no legal basis for the Court to apply California law to determine the validity of the choice-of-law provision. Courts faced with similar situations have regularly held that "[n]on–New York statutes do not invalidate contracts that chose New York law and are valid and enforceable under New York law." *ABB, Inc. v. Havtech, LLC*, 112 N.Y.S.3d 713, 714 (1st Dep't 2019); *see Willis Re*, 550 F. Supp. 3d at 90–92 ("[I]f New York choice-of-law rules call for the Court to apply New York law and the [] clauses are enforceable under that law, then [California law] would not come into the picture at all."); *My Invs. LLC v. Starr Surplus Lines Ins. Co*., 2024 WL 4859027, at *3 (S.D.N.Y. Nov. 20, 2024) ("[A] New York choice of law clause in an insurance policy must be enforced notwithstanding a statute in the insured's home state voiding such clauses.").[12] Under New York law, which the Court must apply here, the provision is valid and enforceable.

---

[12] The New York Court of Appeals has recently held that the validity of a security is governed by the local law of the issuer's jurisdiction even in the presence of a contractual provision stating that the issuing documents are governed by New York law. *Petróleos de Venezuela*, 235 N.E.3d at 955–56. This decision partly rests on the idea that an issuer should not be able to dispense with "significant policies of the issuer's jurisdiction" relating to the internal affairs of the corporation simply by stating the issuance is governed by some other law. *Id.* at 956 (quoting UCC 8–110, cmt. 2). However, the decision also rested significantly on the fact that New York General Obligations Law Section 5-1401, which requires New York courts to honor the choice of New York law in contracts relating to transactions of greater than $250,000, contains an explicit exception for the validity of a security. *Id.* Moreover, the Court of Appeals took care to reaffirm the holding of *Ministers & Missionaries* that "that when the parties have chosen New York Law, a court may not contravene that choice through a common-law conflicts analysis." *Id.* at 957. Therefore, *Petróleos* cannot be read to support a more general exception allowing the consideration of the law of other jurisdictions whenever a contractual provision may be rendered invalid by such law.

The scope of the choice-of-law provision is also determined by New York law.  *Fin. One Pub. Co.*, 414 F.3d at 333.  "New York courts typically apply the law selected in contractual choice-of-law clauses only to causes of action sounding in contract unless the express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties."  *Fleetwood Servs., LLC v. Ram Cap. Funding*, *LLC*, 2022 WL 1997207, at *16 (S.D.N.Y. June 6, 2022) (quoting *EMA Fin., LLC v. NRusz, Inc*., 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020)).  Here, the choice-of-law provision simply states that "[t]his Agreement" will be governed by New York law, without referencing the broader relationship between the parties.  Dkt. No. 42 ¶ 76.  This type of "narrow" choice of law provision "'is not broad enough to reach tort claims incident to the contractual relationship' or . . . other non-contractual causes of action."  *Fleetwood Servs*., 2022 WL 1997207, at *16 (quoting *Fin. One Pub. Co.*., 414 F.3d at 335).  Therefore, the choice-of-law provision only requires the Court to apply New York law to Espat's contractual claims.

### 2.    Third, Sixth, Ninth, and Tenth Causes of Action

Espat's sixth cause of action, for "unlawful non-compete restrictions," Dkt. No. 42 ¶¶ 80–86, is precluded by the application of New York law to the Regional Partnership Agreement.  The cause of action states that the Regional Partnership Agreement contained a non-compete provision prohibited under California Business and Professional Code § 16600 *et seq*., and that Espat suffered damages from the Moving Parties' insistence on enforcing this unlawful provision.  *Id.*  The predicate for this claim is that California law applies to the contract, that the non-compete provision is therefore void, and that the Moving Defendants have prevented Espat "from engaging in his lawful chosen profession in egregious violation of California law."  *Id.* ¶ 85.  Because New York law governs the contract, and there is no claim that New York law bars

the Moving Parties from enforcing the non-compete provision, the Moving Defendants cannot be liable merely for seeking to exercise their contractual rights.  The claim must be dismissed.

The Moving Parties seek to dismiss Espat's third, ninth, and tenth causes of action on the same basis.  However, these causes of action are statutory, not contractual.  *See id.* ¶¶ 63–68 (failure to pay minimum wage pursuant to the California Labor Code); *id.* ¶¶ 106–114 (retaliation pursuant to Cal. Lab. Code § 98.6); *id.* ¶¶ 118–120 (failure to provide accurate wage statements pursuant to Cal. Lab. Code § 226(a)).  The agreement between the parties does not reach these claims.  *Fleetwood Servs.*, 2022 WL 1997207, at *16.  Whether the relevant statutes apply will be determined by other principles of conflicts law and statutory interpretation.  *See, e.g.*, *Trotter v. Nat'l Football League*, 737 F. Supp. 3d 172, 193–94 (S.D.N.Y. 2024) ("[T]he choice-of-law clause encompasses contract issues, not the law of employment discrimination."); *Sullivan v. Oracle Corp.*, 254 P.3d 237, 244 (Cal. 2011) ("[T]he right to overtime under California law is unaffected by contract.").  Therefore, the Court will not dismiss these claims based on the holding that New York law governs the Regional Partnership Agreement.[13]

### 3.    Seventh Cause of Action

The Moving Parties additionally seek to dismiss Espat's seventh cause of action, for breach of contract and unjust enrichment, Dkt. No. 42 ¶¶ 87–93, to the extent that it alleges unjust enrichment, Dkt. No. 45 at 4–5.

"An unjust enrichment claim will not lie when 'there is a valid and enforceable contract governing a particular subject matter, whether that contract is written, oral, or implied-in-fact.'" *Alsayer v. OmniX Labs, Inc.*, 2025 WL 100899, at *14 (S.D.N.Y. Jan. 15, 2025) (quoting *Beth*

---

[13] The Ninth cause of action is also not duplicative of the Eighth Cause of Action, as alleged by the Moving Parties.  Dkt. No. 45 at 4.  The Eighth Cause of Action is under the Fair Labor Standards Act ("FLSA"), and the Ninth Cause of Action is under California law.  Dkt. No. 42 ¶¶ 94–117.

*Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006)).  Although an unjust enrichment claim may be pled in the alternative to a breach of contract claim, there must be some "bona fide dispute . . . as to the existence of the contract." *Nakamura v. Fujii*, 677 N.Y.S.2d 113, 116 (1st Dep't 1998); *see Sobel v. Major Energy Servs., LLC*, 2020 WL 6561602, at *7–8 (S.D.N.Y. July 31, 2020) (requiring there to be some "set of facts" that would support relief on a theory of unjust enrichment rather than breach of contract), *report and recommendation adopted*, 2020 WL 5362357 (S.D.N.Y. Sept. 8, 2020); *Corsello v. Verizon NN.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

Espat argues that he was misclassified as an independent contractor and that certain clauses of the contract were void under California law.  Dkt. No. 46 at 6.  Even assuming this is true, it does not change the fact that Espat had a contract with the Moving Parties to perform the services for which he alleges he was not paid.  In such a case, "[c]ontract is superior to restitution as a means of regulating voluntary transfers because it eliminates, or minimizes, the fundamental difficulty of valuation."  *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, 680 F. Supp. 3d 322, 338 (S.D.N.Y. 2023) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)).  Because the proper value of Espat's services in "generating leads and making placements as contemplated by the agreement between the parties," Dkt. No. 42 ¶ 89, is set by that agreement, the Court will not "eschew the contract and the parties' own *ex ante* definition of their respective obligations and have the court define obligations for them under the theory of quasi-contract," *Frio Energy*, 680 F. Supp. 3d at 338.  The seventh cause of action must be dismissed to the extent it alleges unjust enrichment.  *See Demand Elec., Inc. v. Innovative Tech. Holdings, LLC*, 665 F. Supp. 3d 498, 509 (S.D.N.Y. 2023) (collecting cases).

## II.    Abuse of Process

The Moving Parties argue that the fifteenth cause of action, for abuse of process, fails to state a claim for relief because initiating a lawsuit by a summons and complaint does not constitute abuse of process.  Dkt. No. 45 at 5.  Espat responds that he has alleged the abuse of regularly issued process with a malicious intent to achieve the collateral objective of "blackmail[ing]" him into dropping his administrative charges against the Moving Parties.  Dkt. No. 46 at 7–8.

Both parties assume that New York law applies to the claim for abuse of process for the filing of a lawsuit in New York.  *See Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").  Indeed, except on rare occasions, "[t]he rights and liabilities of the parties for malicious prosecution or abuse of process are determined by the local law of the state where the proceeding complained of occurred."  Restatement (Second) of Conflict of Laws § 155 (1971); *Tripodi v. Loc. Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO,* 120 F. Supp. 2d 318, 322 (S.D.N.Y. 2000); *Heaney v. Purdy*, 272 N.E.2d 550, 551 (N.Y. 1971).

To state a claim for abuse of process under New York law, a plaintiff must plausibly allege that the defendant "(1) employed regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Elek v. Inc. Vill. of Monroe*, 815 F. Supp. 2d 801, 810 (S.D.N.Y. 2011) (alterations omitted) (quoting *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003)); *see HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 106 (S.D.N.Y. 2020).  "A malicious motive alone . . . does not give rise to a cause of action for abuse of process."  *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984); *see also*

*Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 449 (E.D.N.Y. 2012) (Bianco, J.) ("[I]f an individual does no more than initiate and prosecute a criminal or civil action to its authorized conclusion, no abuse of process can be shown, regardless of the individual's malicious intent in doing so." (citation omitted)).  In addition, under New York law, a party proceeding under a theory of abuse of process must allege special damages.  *See*, *e.g.*, *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 212 (S.D.N.Y. 2014).

Espat has failed to allege that Defendants employed any regularly issued legal process. "[L]egal process means that a court issued the process, and the plaintiff will be penalized if he violates it."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citing *Mormon v. Baran,* 35 N.Y.S.2d 906, 909 (N.Y. Sup. Ct. 1942)).  "Process is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act.'"  *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969) (citation omitted).  "It follows that there must be an unlawful interference with one's person or property under color of process in order that action for abuse of process may lie."  *Id.*; *see also Roelcke v. Zip Aviation, LLC*, 571 F. Supp. 3d 214, 233 (S.D.N.Y. 2021) ("[T]o qualify as legal process for purposes of an abuse-of-process claim, the court-issued writ must not only direct or demand that the person to whom it is directed shall perform or refrain from doing some prescribed act, but also interfere with one's person or property." (quoting *Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (summary order))).  Examples of writs which can be so abused include writs of "attachment, execution, garnishment, or sequestration proceedings, or arrest of the person, or criminal prosecution, or even such infrequent cases as the use of a subpoena for the collection of a debt."  *HC2, Inc.*, 510 F. Supp. 3d at 106 (quoting *Williams*, 246 N.E.2d at 335 n.1).  "[T]he mere commencement of a lawsuit cannot serve as the basis for a cause of action alleging abuse

of process." *Greco v. Christoffersen*, 896 N.Y.S.2d 363, 365–66 (2d Dep't 2010); *see also*

*Manhattan Enter. Grp.*, 816 F. App'x at 514 (affirming dismissal of abuse of process claim

based on allegations that the defendant "filed and prosecuted a series of duplicative, frivolous,

and malicious lawsuits aimed at harassing" the plaintiffs).  Under New York law, "the institution

of a civil action by summons and complaint is not legally considered process capable of being

abused." *Curiano*, 469 N.E.2d at 1326; *see Teddy Volkswagen of the Bronx, LLC v. Demersky*,

2020 WL 6424115, at *2 (S.D.N.Y. Nov. 1, 2020) (same); *Influx Cap., LLC v. Pershin*, 131

N.Y.S.3d 712, 716 (2d Dep't 2020) ("[T]he mere commencement of a civil action cannot serve

as the basis for a cause of action alleging abuse of process."); *JPMorgan Chase Bank, N.A. v. 29-*

*33 Ninth Ave., LLC*, 710 F. Supp. 3d 259, 278 (S.D.N.Y. 2024); *HC2, Inc.,* 510 F. Supp. 3d at

106.

Espat also does not allege any "improper use of process after it [wa]s issued." *Williams*,

246 N.E.2d at 335; *see Gilman v. Marsh & McLennan Cos.*, 868 F. Supp. 2d 118, 131 (S.D.N.Y.

2012) (abuse of process requires improper use of process after it is issued), *aff'd*, 654 F. App'x

16 (2d Cir. 2016) (summary order); *Richardson v. N.Y.C. Health & Hosps. Corp.*, 2009 WL

804096 at *16–17 (S.D.N.Y. Mar. 25, 2009) (Sullivan, J.) (same); *Roelcke v. Zip Aviation, LLC*,

2019 WL 10856680 at *6 (S.D.N.Y. Jan. 8, 2019) (same).  In New York, "the pursuit of a

collateral objective must occur after the process is issued; the mere act of issuing process does

not give rise to a claim." *Orellana v. Macy's Retail Holdings, Inc.*, 2018 WL 3368716 at *16

(S.D.N.Y. July 10, 2018) (quoting *Gilman*, 868 F. Supp. 2d at 131).

Espat alleges that this lawsuit was filed with the intent of obtaining an advantage over

him with respect to the lawsuit Moving Parties could have anticipated would result from the

administrative proceeding he launched in California.  However, a party also cannot state a claim

by alleging that a lawsuit was filed against it to gain tactical advantage in that or another litigation. *Tenore v. Kantrowitz, Goldhamer & Graifman, P.C.*, 907 N.Y.S.2d 255, 257 (2d Dep't 2010) (allegation that defendant undertook litigation with an objective of "obtaining a tactical advantage in a pending divorce action" insufficient to state a claim for relief). "Skillful lawyers not infrequently take advantage of whatever forums are available to them to prevail either in the prosecution of a lawsuit or in the defense of another lawsuit. Such conduct is part of the litigation process; it is not tortious." *HC2, Inc.*, 510 F. Supp. 3d at 107; *cf. Wolfe v. Enochian BioSciences Denmark ApS*, 2022 WL 656747 at *11 (D. Vt. Mar. 3, 2022). The claim for abuse of process must be dismissed.

## III.    Malicious Prosecution

For malicious prosecution claims brought under New York Law, federal courts must apply New York law. *See Lanning v. City of Glens Falls,* 908 F.3d 19, 28 (2d Cir. 2018). To sustain a cause of action for malicious prosecution under New York Law, a plaintiff must sufficiently show "(1) commencement or continuation of a judicial proceeding, (2) malice, (3) want of probable cause, and (4) the successful termination of the precedent action in the plaintiff's favor. *Gilman,* 868 F.Supp.2d at 127–128 (quoting *Delince v. City of New York*, 2011 WL 666347 at *5 (S.D.N.Y. Feb. 7, 2011)). A defendant meets its prima facie burden of showing that a claim is premature when the underlying civil proceeding has not terminated in the plaintiff's favor. *See 10 Bethpage Road, LLC v. 114 Woodbury Realty, LLC,* 114 N.Y.S.3d 104, 110 (2d Dep't 2019).

Moving Parties argue that Defendant's cause of action for malicious prosecution should be dismissed because the claim is premature and fails to meet the required elements under New York law. Dkt. No. 45 at 5. Espat, in response, does not dispute that a malicious prosecution claim requires a favorable termination on the merits of the underlying litigation. Dkt. No. 46 at

8.  Because Defendant's claim is based on TCA's commencement of this case, and this case has

not yet terminated, this element is indisputably not met.  However, Defendant argues that where

a decision in favor of Defendant as to the underlying case would decide the malicious

prosecution claim, a stay is an appropriate remedy.  *Id.* at 8–9.

A court has discretion to grant a stay of litigation "upon a particularized inquiry into the

circumstances of, and the competing interests in, the case."  *Louis Vuitton Malletier S.A. v. LY*

*USA, Inc.*, 676 F.3d 83, 99–100 (2d Cir. 2012).  Some courts have granted stays in malicious

prosecution cases when the underlying litigation is criminal, and the malicious prosecution claim

is brought in a separate litigation.  *Johnson v. N.Y.C. Police Dep't*, 2003 WL 21664882, at *3

(S.D.N.Y. July 16, 2003).  These cases have noted concerns present when a civil proceeding

overlaps with a pending criminal proceeding, such as the risk a party's testimony will be used

against him in the criminal prosecution.  *Louis Vuitton Malletier*, 676 F.3d at 101; *see also*

*Johnson*, 2003 WL 21664882, at *2 (finding that a stay was appropriate when the pending

criminal action prejudiced the defendant by precluding him access to grand jury transcripts and

other records).[14]

Here, no such considerations favor a stay.  Espat's argument that granting a stay would

favor judicial economy is misplaced under these circumstances.  Espat's malicious prosecution

counterclaim here is based not on any underlying proceeding but on the Moving Parties' decision

---

[14] District courts in the Second Circuit may apply a six-factor balancing test in deciding to grant
a stay of a malicious prosecution claim when the underlying criminal case has not yet terminated
in favor of the plaintiff.  *See Louis Vuitton Malletier S.A.,* 676 F.3d at 99.  These factors include
"1) the extent to which the issues in the criminal case overlap with those presented in the civil
case; 2) the status of the case, including whether the defendants have been indicted; 3) the
private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to
plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the
interests of the courts; and 6) the public interest."  *Id.*; *Gala Enters., Inc. v. Hewlett Packard Co.*,
1996 WL 732636 at *2 (S.D.N.Y. Dec. 20, 1996).

to bring this very lawsuit, and it is premised on the view that he will eventually succeed in this lawsuit.  Dkt. No. 42 ¶¶ 157–162.  This type of circular claim must be discouraged.  There is a strong policy interest in the "postponement of suits that will ordinarily not arise if [a] plaintiff wins [the] main action," as well as in avoiding the dangerous potential of malicious prosecution counterclaims being asserted as a harassing defense strategy, as opposed to a claim made in good faith once all the elements are met.  *Harris v. Steinem*, 571 F.2d 119, 125 (2d Cir. 1978); *see Chrysler Corp. v. Fedders Corp.*, 540 F. Supp. 706, n.2 (S.D.N.Y. 1982).  These concerns suggest that the claim should be brought, if at all, once Espat is victorious in this action.  The Court declines to grant a stay and will deny Espat's claim for malicious prosecution as premature.

## CONCLUSION

The motion to dismiss is GRANTED IN PART and DENIED IN PART.  The motion to dismiss is granted as to Espat's Sixth, Fifteenth, and Sixteenth causes of action and the portion of his Seventh cause of action alleging unjust enrichment, and otherwise denied.

The Clerk of Court is respectfully directed to close Dkt. No. 43.

SO ORDERED.

Dated: March 28, 2025
New York, New York
_____
LEWIS J. LIMAN
United States District Judge